**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

HEIDI DALTON,                                  :
                                               :
                              Plaintiff,        :          Civil Action No. 17-4094 (FLW) (DEA)
                                               :
            v.                                  :
                                               :                          **OPINION**
THE STATE OF NEW JERSEY;                        :
THE NEW JERSEY STATE POLICE;                    :
THE NEW JERSEY OFFICE OF                         :
ATTORNEY GENERAL; and                           :
LIEUTENANT ILIAS                                :
ANDRINOPOULOS,                                  :
                                               :
                              Defendants.        :
_____                 :

**WOLFSON, United States District Judge**:

The instant action arises out of an employment relationship between Plaintiff Heidi

Dalton ("Plaintiff") and the New Jersey State Police (the "State Police").  Following the

termination of her employment with the State Police, Plaintiff asserted various state and federal

civil rights claims, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2, *et seq.*,

section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, and the New Jersey Law Against

Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), against the State of New Jersey, the State

Police, the New Jersey Office of the Attorney General (the "OAG"), and Lieutenant Ilias

Andrinopoulos (collectively, "Defendants").  Presently before the Court are:  (1) Defendants'

Motion to Dismiss Plaintiff's Complaint; and (2) Plaintiff's Cross Motion for Leave to File an

Amended Complaint.[1]  For the reasons that follow, Defendants' Motion is granted, and Plaintiff's Cross Motion is denied.

## I.     BACKGROUND[2]

On February 7, 2001, Plaintiff began her employment as a civilian employee of the State Police.  Proposed Amended Complaint ("Am. Compl."), ¶ 1.  From 2005 to 2014, Plaintiff worked in the Missing Persons unit of the State Police, where her primary job function was to activate Amber alerts.  *Id.* at ¶¶ 2-5, 8.

In 2009, Lieutenant Andrinopoulos joined the Missing Persons unit as a Detective Sergeant.  *Id.* at ¶ 10.  Plaintiff alleges that, during that time, Lieutenant Andrinopoulos expressed his dissatisfaction with his placement in the Missing Persons unit, conveying a preference for placement within the Major Crimes unit.  *Id.* at ¶¶ 13.  Plaintiff further alleges that while Lieutenant Andrinopoulos was in the Missing Persons unit, he "told Trooper Enrique Brian that he was going to target . . . Plaintiff."  *Id.* at ¶ 14.

Approximately two years after his placement in the Missing Persons unit, Lieutenant Andrinopoulos was transferred to the Essex County Task Force of Major Crimes ("Major Crimes").  *Id.* at ¶ 12.  Nonetheless, shortly after his assignment to Major Crimes, Lieutenant Andrinopoulos was reassigned to the Missing Persons unit.  *Id.* at ¶ 15.  Plaintiff alleges that Lieutenant Andrinopoulos' reassignment was the result of his "inability to supervise subordinates and to render their workplace as hostile."  *Id.* at ¶ 15.  Plaintiff also avers that, prior

---

[1] Plaintiff attached a Proposed Amended Complaint to her Cross Motion, which the Court will consider for the purposes of this Opinion.
[2] The following facts are drawn from Plaintiff's Proposed Amended Complaint, and are taken as true for the purposes of the instant Motion.

to Lieutenant Andrinopoulos' reassignment to the Missing Persons unit, Lieutenant Andrinopoulos had a "substantiated domestic violence internal" investigation. *Id.* at ¶ 16.[3]

Plaintiff alleges that, following Lieutenant Andrinopoulos' reassignment to the Missing Persons unit, Lieutenant Andrinopoulos "made known that he harbored dislike" for both Plaintiff and State Trooper Brian Kearns ("Trooper Kearns"). *Id.* at ¶ 19. Specifically, Plaintiff avers that Lieutenant Andrinopoulos manipulated State Police reports to create the impression that Trooper Kearns was failing to adequately perform his job responsibilities within the Missing Persons unit. *Id.* at ¶ 20. Plaintiff further alleges that, in response to Lieutenant Andrinopoulos' conduct with respect to Trooper Kearns, Plaintiff submitted various documents to Captain Gordon SanMartino, with the purpose of demonstrating that Trooper Kearns was being unfairly evaluated. *Id.* at ¶ 21.

Plaintiff next alleges that, in early 2013, Lieutenant Andrinopoulos "turned [Plaintiff's supervisor,] Lieutenant Tansey[,] against . . . Plaintiff" while Plaintiff was out of work for two days on personal leave. *Id.* at ¶¶ 23-24. Plaintiff avers, without further elaboration, that Lieutenant Andrinopoulos' actions in this regard created a hostile work environment for Plaintiff upon her return to work. *Id.* at ¶ 24. Plaintiff alleges further that Lieutenant Andrinopoulos also turned Lieutenant Paul Valles against Plaintiff, despite the fact that Plaintiff and Lieutenant Valles had a good working relationship prior to the involvement of Lieutenant Andrinopoulos.

---

[3] Plaintiff avers that Lieutenant Andrinopoulos' "problems" while in the Major Crimes unit and prior domestic violence case should have alerted the State Police to Lieutenant Andrinopoulos' propensity to abuse subordinates and females. *Id*. at ¶ 17. However, while, for the purposes of this Motion, the Court accepts Plaintiff's factual allegations pertaining to the internal domestic violence investigation and Lieutenant Andrinopoulos' conduct while in Major Crimes as true, I need not accept as true Plaintiff's legal conclusion pertaining to the State Police's state of mind. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citation omitted).

*Id.* at ¶ 25.  Plaintiff also alleges, without explanation, that in December of 2013, Lieutenant Andrinopoulos "engineered a plot to remove the Plaintiff and was found out." *Id.* at ¶ 48.

In the remainder of the Proposed Amended Complaint, Plaintiff recounts a laundry list of interactions between herself and Lieutenant Andrinopoulos, alleging that these interactions occurred within the scope of Lieutenant Andrinopoulos' employment, and amount to gender discrimination:

- Plaintiff alleges that, in early 2014, during the course of a meeting regarding an upcoming snow day, Lieutenant Andrinopoulos criticized Plaintiff in front of other attendees, and stated, "When I become your boss, things are going to be fucking different."  Am. Compl. ¶¶ 26-32.  Plaintiff further alleges that, when she asked Lieutenant Andrinopoulos "what his problem was with her," Lieutenant Andrinopoulos explained that it related to Plaintiff's defense of Trooper Kearns.  *Id.* at ¶ 33.

- Plaintiff alleges that her supervisors, including Lieutenant Andrinopoulos, "deprived her of PARS evaluations even though she filed two grievances."[4]  *Id.* at ¶ 34.

- Plaintiff alleges generally that Lieutenant Andrinopoulos "created a hostile work environment and did yell and scream at the Plaintiff every chance he got."  *Id.* at ¶ 36.

- Plaintiff alleges that, on one occasion, where she was late to work due to a truck blocking her entry to the office, Lieutenant Andrinopoulos called her and asked, "Where the fuck are you?"  *Id.* at ¶ 37.

- Plaintiff alleges that Lieutenant Andrinopoulos refused to call on Plaintiff to speak in meetings, and removed various work responsibilities from Plaintiff, including taking away Plaintiff's Amber alert notifications and her oversight of ordering supplies.  *Id.* at ¶¶ 39-43, 55-59.

- Plaintiff alleges that Lieutenant Andrinopoulos put in a request for Plaintiff to be transferred to another unit.  *Id.* at ¶ 41.

- Plaintiff alleges that Lieutenant Andrinopoulos once sent a Trooper to her house when Plaintiff was out on sick leave.  *Id.* at ¶ 44.

---

[4] In the Proposed Amended Complaint, Plaintiff does not indicate what a "PARS evaluation" is, or allege that Defendants are legally required to provide her with a PARS evaluation.  Nor does Plaintiff elaborate on the grievances that she allegedly filed, including when such grievances were filed, with whom they were filed, or the response to her grievances.

- Plaintiff alleges that, on one occasion, Lieutenant Andrinopoulos threatened to send a Trooper to her house to retrieve Plaintiff's equipment, laptop, and cell phone, but instead sent a union representative to retrieve these items. *Id.* at ¶ 45.

- Plaintiff alleges that, in March of 2014, she was required to train Kim Smith, a personal friend of Lieutenant Andrinopoulos, on how to handle Amber alerts in the Missing Persons unit. *Id.* at ¶¶ 49-50. Plaintiff further alleges that Lieutenant Andrinopoulos transferred Plaintiff's Amber alert job responsibilities to Ms. Smith in May of 2014. *Id.* at ¶ 61. Additionally, Plaintiff avers that, despite the fact that Ms. Smith had already assumed responsibility for activating Amber alerts, Lieutenant Andrinopoulos criticized Plaintiff for the way that an Amber alert was handled in May 2014. *Id.* at ¶¶ 59-52.

In the Proposed Amended Complaint, Plaintiff alleges that, in February 2014 and March 2014, she filed complaints against Lieutenant Andrinopoulos with the United States Equal Employment Opportunity Commission (the "EEOC"). *Id.* at ¶¶ 35, 39. Subsequently, the EEOC found that Plaintiff's allegations against Lieutenant Andrinopoulos were unsubstantiated. *Id.* at ¶ 54.

In approximately May of 2014, Plaintiff took a leave of absence from work due to "stress," and remained out of work until December of 2014. *Id.* at ¶ 63. Ultimately, Plaintiff was terminated from her employment with the State Police on May 5, 2016. *Id.* at ¶ 64.

On May 10, 2017, Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey, Mercer County, Law Division, alleging that Defendants' actions amounted to discrimination, in violation of Plaintiff's constitutional rights under § 1983 and the NJLAD. On June 7, 2017, Defendants removed the Complaint to this Court, pursuant to 28 U.S.C. §§ 1441 and 1443, based on the Court's federal question jurisdiction over Plaintiff's § 1983 claim. ECF No. 1. Defendants filed the instant Motion to Dismiss on July 19, 2017. ECF No. 8. Plaintiff filed her Opposition to that Motion on September 5, 2017, and cross moved to amend the Complaint. ECF No. 14. Defendants filed their Reply on September 25, 2017. ECF No. 17.

The Proposed Amended Complaint asserts four counts against Defendants. In Count One, Plaintiff alleges that the actions of Defendants amounted to gender discrimination against Plaintiff, in violation of her "constitutional rights." Am. Compl. at 8. In Count Two, Plaintiff alleges that Defendants created a hostile work environment, which "caused the Plaintiff to go on sick leave and eventually, to be terminated." *Id.* In that connection, in Count Two, Plaintiff alleges that the State Police and the OAG had knowledge, as a result of Lieutenant Andrinopoulos' "history of creating hostile work environments," that Lieutenant Andrinopoulos created a hostile work environment for Plaintiff due to her gender, yet "took no action to correct the same." *Id.* In Count Three, Plaintiff asserts a claim for constructive discharge, alleging that Lieutenant Andrinopoulos created a hostile work environment for Plaintiff, in order to terminate Plaintiff from her position and to replace her with his personal friend, Ms. Smith. *Id.* Finally, in Count Four, Plaintiff alleges that Lieutenant Andrinopoulos created "a false employment investigation" against Trooper Kearns, and that, after Plaintiff submitted evidence supporting Trooper Kearns, Lieutenant Andrinopoulos retaliated by creating a hostile work environment for Plaintiff, which led to Plaintiff becoming ill, and eventually, to Plaintiff's termination. *Id.* at 9.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

In reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely

tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief"; it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants"; rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## B.    Motion to Amend Complaint

Under Federal Rule of Civil Procedure 15(a), a plaintiff may amend her pleading once as a matter of course. *See* FED. R. CIV. P. 15(a). At all other times, the plaintiff must seek leave of the court to amend her complaint, and "[t]he court should freely give leave when justice so requires." *Id.* When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Shane v. Fouver*, 213 F.3d 113, 115 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice, and futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted. *Burlington*, 114 F.3d at 1434; *Grayson v. Mayview State Hospital*, 293 F.3d 103, 113 (3d Cir. 2002). Thus, in determining whether a complaint, as amended, is futile, the District Court must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane*, 213 F.3d at 115. "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's Complaint, arguing that Plaintiff has failed to state a claim upon which relief can be granted. Defendants further maintain that Plaintiff's proposed amendment would be futile, because the Proposed Amended Complaint likewise fails to state a claim upon which relief can be granted.

**A.     § 1983 Claims against the State Entities and Lieutenant Andrinopoulos in his Official Capacity**

The first two counts of the Proposed Amended Complaint allege that the State Police, the OAG, and Lieutenant Andrinopoulos violated Plaintiff's constitutional rights, under § 1983, by: (1) engaging in gender discrimination; and (2) creating a hostile work environment.  Defendants move to dismiss those counts, contending that the State Police, the OAG, and Lieutenant Andrinopoulos, to the extent that he is being sued in his official capacity, are not "persons" for the purposes of § 1983.  Plaintiff does not address Defendants' contention that Defendants are not "persons" amendable to suit under § 1983, arguing instead that Plaintiff's § 1983 claims should not be dismissed because the State Police and the OAG permitted Lieutenant Andrinopoulos to serve in a supervisory capacity over Plaintiff, despite their knowledge of Lieutenant Andrinopoulos' conduct while serving in the Major Crimes unit, as well as their knowledge that the State Police had previously conducted an internal domestic violence investigation of Lieutenant Andrinopoulos.

Section 1983 states, in relevant part, that:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  "The statute's text is clear: a § 1983 suit may only be brought against a defendant who is considered a 'person' within the meaning of § 1983."  *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012)

It is well-established that the state and state entities are not "persons" for purposes of § 1983, and thus, are not amenable to suit under that statute.  *See Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989); *see also Smith*, 908 F. Supp. 2d at 563 ("*Will* has thus

been held to 'establish[ ] that the State and arms of the State . . . are not subject to suit under §

1983 . . . .") (quoting *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990)). In

*Will*, for example, the Supreme Court held that the Michigan State Department of Police was not

subject to suit under § 1983, because, as an arm of the state, it was not a "person" within the

confines of § 1983. *Id.* Indeed, following the Supreme Court's decision in *Will*, courts within

this District have routinely dismissed § 1983 claims against the State Police and the OAG, on the

grounds that those entities are not "persons" subject to suit under § 1983. *See*, *e.g.*, *Smith*, 908 F.

Supp. 2d at 563 (dismissing the plaintiff's § 1983 claims "against the State of New Jersey and

the New Jersey State Police because the state and arms of the state may not be sued under §

1983."); *Villegas v. Corr. Med. Servs., Inc.*, No. 14-7337, 2016 WL 3708218, at *1 (D.N.J. July

12, 2016) (dismissing § 1983 claims against the OAG, because the OAG is not a "person" within

the meaning of § 1983); *Garcia v. Corr. Med. Serv.*, No. 13-1250, 2016 WL 55268, at *4 (D.N.J.

Jan. 4, 2016) (holding that the plaintiff could not assert a § 1983 claim against the OAG, because

the OAG is not a "person" under § 1983); *Gonzalez v. Bobal*, No. 13-1148, 2015 WL 1469776,

at *3 (D.N.J. Mar. 30, 2015) ("Defendant New Jersey State Police is not amenable to suit under §

1983 because it is a subdivision of the State."). Accordingly, because the State Police and the

OAG are state entities, and not persons, the Court will dismiss Plaintiff's § 1983 claims against

the State Police and the OAG.[5]

---

[5] The Court notes that, in the Proposed Amended Complaint, Plaintiff names the State of New Jersey as a Defendant in the case caption. However, none of the counts within the complaint are asserted against the State of New Jersey specifically. To the extent that Plaintiff intended to assert § 1983 claims against the state, there can be no real dispute that the state is not a "person" subject to suit under § 1983, and therefore, Plaintiff's § 1983 claims against the state are likewise dismissed.

In addition to holding that the state and state entities are not "persons" subject to suit under § 1983, the *Will* Court recognized that although state officials are "literally persons[,] . . . a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71. Thus, because a suit against a state official acting in his or her official capacity is no different from a suit against the state itself, the *Will* Court held that a plaintiff cannot bring a § 1983 claim against a state actor for conduct occurring in his or her official capacity. *Id.*; *see Smith*, 908 F. Supp. 2d at 563 ("[S]tate actors in their official capacities are not persons who may be sued under § 1983.").

Conversely, a plaintiff may bring a § 1983 claim against a state actor in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id*. As the Supreme Court has explained:

> *Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.* at 27. "In determining whether [a Plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts in this District] first look to the complaints and the course of proceedings." *Melo*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (internal citations and quotations omitted).

Here, neither the Complaint nor the Proposed Amended Complaint specifies whether Plaintiff's § 1983 claims against Lieutenant Andrinopoulos are asserted against him in his official capacity or in his individual capacity. As the previous discussion illustrates, to the extent that Plaintiff's § 1983 claims are asserted against Lieutenant Andrinopoulos in his official

capacity, those claims must be dismissed.[6]  And, as the Court will discuss, below, even assuming that Plaintiff's § 1983 claims are asserted against Lieutenant Andrinopoulos in his individual capacity, because Plaintiff has failed to allege facts sufficient to meet the *prima facie* case for a gender discrimination or hostile work environment claim, those claims must be dismissed for failure to state a claim upon which relief can be granted.

### B.      Gender Discrimination under Title VII and the NJLAD

In Counts One and Two of the Proposed Amended Complaint, Plaintiff alleges generally that Defendants discriminated against her, based on her gender.  While it is not entirely clear, from the Proposed Amended Complaint, under which statutes Plaintiff seeks to bring her gender-based employment discrimination claims, in her Opposition to Defendant's Motion to Dismiss, Plaintiff argues that she "asserts . . . gender discrimination . . . claims under Title VII, [the NJLAD], and Section 1983."  Pl.'s Opp. to Defs.' Mot. to Dismiss 2.  However, the Court has already discussed Plaintiff's § 1983 claims, and thus, will limit its analysis to Title VII and the NJLAD.

"Title VII prohibits employment discrimination based on an individual's sex."  *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *see* 42 U.S.C. § 2000e-2(a)(1).  In order to state a claim for employment discrimination under Title VII, a plaintiff must demonstrate that "(1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek

---

[6] The Court notes that while an individual acting in his official capacity cannot be sued for money damages under § 1983, an exception to that general rule permits a plaintiff to bring a § 1983 official capacity claim when the plaintiff seeks injunctive relief.  *See Will*, 491 U.S. at 92.  However, there is no request for injunctive relief in the Proposed Amended Complaint, and therefore, that exception does not apply in the instant case.

out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).[7] Plaintiff maintains that the facts pled in the Proposed Amended Complaint are sufficient to state a claim for gender discrimination. The Court disagrees.

Here, Plaintiff does not allege any facts to demonstrate that she was discriminated against on the basis of her gender. While Plaintiff has satisfied the first element of her *prima facie* case by alleging that she is a female, Plaintiff's Proposed Amended Complaint is devoid of any allegations sufficient to raise an inference of gender-based discrimination. To that end, while the Proposed Amended Complaint states the vague legal conclusion that Plaintiff was discriminated against because of her gender,[8] Plaintiff fails to allege any facts supporting an inference that the alleged discriminatory conduct was the result of her gender. In other words, Plaintiff's bare conclusory assertion of gender discrimination is insufficient, standing alone, to meet the pleading standard, because Plaintiff has not alleged facts demonstrating that she was discriminated against

---

[7] Because the showings required to state a gender-based discrimination claim under Title VII, § 1983, and the NJLAD are identical, the Court will analyze Plaintiff's state and federal gender-based discrimination claims concurrently. *See Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 816 (3d Cir. 2010) ("The showing required to prove a § 1983 gender discrimination claim is identical to that required by Title VII . . . ."); *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005) (finding that the *prima facie* case for gender discrimination under the NJLAD mirrors that under Title VII); *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 597 (1988) (employing the same *prima facie* standard to a discriminatory discharge claim brought under the NJLAD).

[8] Specifically, the only references to Plaintiff's gender in the Proposed Amended Complaint are: (1) that the "actions of Defendant Andrinopoulos against the Plaintiff were discriminatory against the Plaintiff because of her gender," Am. Compl. at ¶ 66; (2) the "actions of Defendants herein [constitute] discrimination against the Plaintiff because of her gender," *id*. at 8; and (3) "Defendant Andrinopoulos created a hostile work environment against the Plaintiff because of her gender . . . ." *Id.* Absent adequate factual support, the Court is not bound to accept these legal conclusions on the instant Motion. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

*because* of her gender.  *See Taylor v. Wee Health Care Servs., Inc.*, No. 09-4034, 2010 WL 1050130, at *4 (D.N.J. Mar. 19, 2010) (dismissing the plaintiff's gender-based employment discrimination claim, where the plaintiff failed to sufficiently allege that she was terminated because of her gender).  Accordingly, because Plaintiff has failed to sufficiently allege that she was discriminated against on the basis of her gender, Plaintiff's gender discrimination claims are dismissed without prejudice.

### C.  Hostile Work Environment and Constructive Discharge

Plaintiff next argues that Lieutenant Andrinopoulos created a hostile work environment for Plaintiff, because of her gender, which "caused Plaintiff to go out on sick leave and eventually, to be terminated."  Am. Compl. at 8.[9]

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. § 2000e-2(a)(1).  In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993), the Supreme Court made clear that "this language is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment."  *Id.* at 21 (quoting *Meritor Sav. Bank, FSB v.*

---

[9] The Court notes that Counts Two, Three, and Four of the Proposed Amended Complaint each assert that Lieutenant Andrinopoulos created a hostile work environment, with only minor differences between the claims.  Specifically, Count Two alleges generally that Lieutenant Andrinopoulos created a hostile work environment due to Plaintiff's gender, which led to Plaintiff going out on sick leave, and eventually being terminated.  Count Three alleges that Lieutenant Andrinopoulos' actions – in creating a hostile work environment in order to have Plaintiff terminated from her position and replaced with Ms. Smith – constitute a constructive discharge.  In Count Four, Plaintiff alleges that Lieutenant Andrinopoulos created a hostile work environment for Plaintiff in response to Plaintiff's defense of Trooper Kearns.

*Vinson*, 477 U.S. 57, 64 (1986)) (internal quotation marks omitted). Stated differently, Title VII prohibits discriminatory conduct "that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Kokinchak v. Postmaster Gen. of the United States*, 677 F. App'x 764, 766 (3d Cir. 2017) (quoting *Harris*, 510 U.S. at 21). A claim alleging that sort of discrimination "is referred to as a hostile work environment claim." *Kokinchak*, 677 F. App'x at 766.

To state a *prima facie* case for a hostile work environment claim based on gender discrimination, an employee must establish that: "'(1) [she] suffered intentional discrimination because of [her] sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the [employee], (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of *respondeat superior* liability.'" *Wood v. Univ. of Pittsburgh*, 395 F. App'x 810, 815 (3d Cir. 2010) (quoting *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007)). "The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Here, Plaintiff has failed to allege facts sufficient to meet her *prima facie* burden of establishing a hostile work environment claim.

At the outset, the Court finds that Plaintiff has failed to sufficiently allege that she was discriminated against on the basis of her gender. Importantly, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . *because of* . . . *sex* [or membership in another protected class]." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (emphasis in original); *see*, *e.g.*, *Lacy v. Nat'l R.R. Passenger Corp.*, 254 F. App'x 934, 936 (3d Cir. 2007) (dismissing the plaintiff's hostile work environment claim, where the plaintiff "failed to show that she suffered intentional discrimination *because of*

*her race or sex . . . .*") (emphasis added).  As a result, "[v]erbal and physical harassment, no matter how unpleasant and ill-willed, is simply not prohibited by Title VII if not motivated by the plaintiff's gender (or membership in other protected groups)."  *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000), *aff'd sub nom. Koschoff v. Runyon*, 35 F. App'x 357 (3d Cir. 2002).

Significantly, in the instant case, the allegedly discriminatory conduct cited by Plaintiff bears no relation to her protected status as a female, and thus, Plaintiff fails to allege facts sufficient to meet the first element of her *prima facie* case.  *See Itiowe v. Cablevision Sys. Corp.*, No., 2012 WL 570589, at *8 (D.N.J. Feb. 21, 2012) ("[T]he vast majority of the comments and conduct that [the plaintiff] alleges in support of her [hostile work environment] claim are not suggestive of discrimination and thus fail to satisfy the first element of her *prima facie* case.").  For example, Plaintiff alleges that Lieutenant Andrinopoulos berated Plaintiff with profanity on one occasion when she was late, minimized Plaintiff's involvement in work meetings, and removed responsibilities from Plaintiff's position.  However, the Proposed Amended Complaint does not indicate how these incidents were motivated by a discriminatory animus; *i.e.*, Plaintiff has not alleged any specific incidents demonstrating that discriminatory conduct was directed against her on the basis of her gender.  Rather, the allegations in the Proposed Amended Complaint, at best, speak solely to a sour employment relationship, falling outside of Title VII's purview.  Accordingly, because Plaintiff has not sufficiently alleged intentional discrimination on the basis of her gender, her hostile work environment claim is dismissed without prejudice.

Moreover, the Court notes that, for the same reasons, Plaintiff has not alleged facts sufficient to meet her burden of showing that the gender-based discrimination was severe or pervasive.  As referenced above, a hostile work environment claim requires a plaintiff to show

that the workplace is permeated with "discriminatory intimidation, ridicule[,] and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal citation and quotation marks omitted). To determine whether an environment is sufficiently hostile, the Court must consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel*, 706 F.3d at 168 (quoting *Harris*, 510 U.S. at 23).

"[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In that regard, it is well-established that "simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788. Additionally, Title VII does not "reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex . . . ; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale*, 523 U.S. at 81. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Ultimately, these "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale*, 523 U.S. at 80). "Properly applied, they will filter

out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id.* (citation omitted).

Here, the facts alleged in the Proposed Amended Complaint fail to demonstrate severe and pervasive gender-based discrimination, rising to the level of a hostile work environment. To that end, as the Court has already observed, while Plaintiff alleges that Lieutenant Andrinopoulos yelled and screamed at her, eliminated some of her job responsibilities, and minimized her ability to participate in meetings, Plaintiff has not alleged any facts demonstrating that this conduct was the result of gender-based discrimination. Accordingly, the Proposed Amended Complaint fails to sufficiently allege severe and pervasive gender-based discrimination.[10]

### D.      Retaliation

Plaintiff also maintains that she was the victim of unlawful workplace retaliation under Title VII and the NJLAD. Specifically, Plaintiff alleges that Lieutenant Andrinopoulos created a

---

[10] Plaintiff also asserts that Lieutenant Andrinopoulos' actions in creating a hostile work environment resulted in a constructive discharge. To establish a constructive discharge as a result of a hostile work environment, in addition to alleging a hostile work environment, an employee must further show "that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Mandel*, 706 F.3d at 169 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)). To that end, "[t]he degree of harassment necessary to prove constructive discharge is greater than the minimum needed to prove a hostile work environment." *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 117–18 (3d Cir. 2017); *see Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n. 4 (3d Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.") (citation and internal quotation marks omitted). Here, because Plaintiff has failed to sufficiently allege a hostile work environment, her constructive discharge claim, which is premised on a hostile work environment, necessarily fails as well. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 118 (3d Cir. 2017) ("Because the conduct alleged is not sufficiently severe or pervasive to constitute a hostile work environment claim, it also falls short of a constructive discharge claim."); *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 175 (3d Cir. 2014) ("Because [the plaintiff] failed to establish conduct sufficient to establish a hostile work environment, her constructive discharge claim fails.").

hostile work environment for Plaintiff in retaliation to Plaintiff's conduct in submitting evidence in support of Trooper Kearns, after Lieutenant Andrinopoulos spearheaded an investigation against Trooper Kearns.

To establish a *prima facie* case of retaliation under either statute, "an employee must show (1) that he or she engaged in protected activity, (2) that he or she was subjected to an adverse action by the employer, and (3) the existence of a causal link between the employee's protected activity and the purportedly adverse action." *Wood*, 395 F. App'x at 815; *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 71 (3d Cir. 1996) (citing *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 548 (App. Div. 1995)).

The "protected activity" element of the *prima facie* case for unlawful retaliation signals the death knell for Plaintiff's claim. As relevant here, Title VII[11] protects "those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). As a result, "[n]ot every complaint or report entitles its author to protection from retaliation under Title VII. Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 202–03 (3d Cir. 2011). Thus, for a complaint to constitute "protected activity" under Title VII or the NJLAD, "it must implicate an employment practice

---

[11] While the Court's discussion of the "protected activity" prong of a retaliation case focuses on Title VII, the Third Circuit has explained that the same analysis applies to the protected activity prong of a retaliation case brought under the NJLAD. *See Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) ("[T]he same analysis applies to [the protected activity prong of the plaintiff's] NJLAD claim. . . . To establish a *prima facie* case of retaliation under the NJLAD, [the plaintiff] must plead both that she opposed 'a practice rendered unlawful' by the statute and that the employer knew about that opposition.") (quoting *Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 466 (App. Div. 2005)).

made illegal by Title VII." *Id.* at 203; *see Young v. Hobart W. Grp.*, 385 N.J. Super. 448, 466 (App. Div. 2005) ("[A] person engages in protected activity under the [NJLAD] when that person opposes any practice rendered unlawful under the [NJLAD].").

Here, even accepting as true Plaintiff's allegations with respect to Trooper Kearns, Plaintiff has failed to allege that she was retaliated against due to her complaints about *conduct prohibited by either Title VII or the NJLAD*. To that end, while Plaintiff alleges that Lieutenant Andrinopoulos disliked Trooper Kearns, and manipulated documents in order to falsely portray Kearns as failing to carry out his job responsibilities, Plaintiff does not claim that Lieutenant Andrinopoulos' conduct against Trooper Kearns was the result of unlawful discrimination. Accordingly, because Plaintiff's submissions to Captain SanMartino "failed to identify any conduct proscribed by Title VII [or the NJLAD], they do not amount to 'protected activity,' and thus cannot form the basis for a retaliation claim." *Davis*, 417 F. App'x at 203. Accordingly, Plaintiff has failed to allege a *prima facie* case of retaliation under either Title VII or the NJLAD, and those claims will be dismissed without prejudice.

### E.     Cross Motion for Leave to Amend

In the foregoing discussion, the Court considered Plaintiff's Proposed Amended Complaint, but found that the allegations contained therein, taken as true, were insufficient to state a claim upon which relief can be granted. Accordingly, because Plaintiff's proposed amendments would be futile, the Court denies Plaintiff's Cross Motion for Leave to File an Amended Complaint.

### IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's § 1983 claims against the State of New Jersey, the OAG, the State Police, and the official capacity claims

against Lieutenant Andrinopoulos is granted with prejudice. Defendants' Motion to Dismiss Plaintiff's Title VII and NJLAD claims against all Defendants, as well as Plaintiff's individual capacity claims against Lieutenant Andrinopoulos under § 1983, is granted without prejudice. Plaintiff's Cross Motion for Leave to File an Amended Complaint is denied, because the Proposed Amended Complaint would be futile.

Dated:  January 5, 2018                                   /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge